UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HARRIET J. INESS,                          )
                                           )    No. 10-CV-0398-JPH
              Plaintiff,                    )
                                           )
v.                                         )    ORDER GRANTING DEFENDANT'S
                                           )    MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                         )    JUDGMENT AND DENYING
Commissioner of Social Security,           )    PLAINTIFF'S MOTION FOR
                                           )    SUMMARY JUDGMENT
              Defendant.                    )
                                           )
                                           )
                                           )

      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec.16, 21.)  Attorney

Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Lisa Goldoftas

represents defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.)

After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** defendant's

Motion for Summary Judgment and **DENIES** plaintiff's Motion for Summary Judgment.

## JURISDICTION

      Plaintiff Harriet J. Iness (plaintiff) protectively filed for supplemental security income (SSI) on

May 9, 2006.  (Tr. 58.)  Plaintiff initially alleged an onset date of May 1, 2005 but later amended the

alleged onset date to May 9, 2006.  (Tr. 640.)  Benefits were denied initially and on reconsideration.  (Tr.

27, 33.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before

ALJ Richard A. Say on July 25, 2007.  (Tr. 426-48.)  Plaintiff was represented by counsel and testified

at the hearing. (Tr.427-39.)  Vocational expert Tom Moreland also testified. (Tr. 439-46.)  The ALJ

denied benefits (Tr. 12-23) and the Appeals Council denied review. (Tr. 4.)  Plaintiff filed a claim in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

1  U.S. District Court for the Eastern District of Washington and the parties stipulated to an order remanding

2  for additional findings. (Tr. 458.)  A second hearing was held on May 24, 2010 before ALJ R.J. Payne.

3  (Tr. 640-78.)  Testimony was given by plaintiff and medical experts Steven Gerber, M.D., and Marian

4  Martin, Ph.D.  (Tr. 642-77.)  ALJ Payne denied benefits (Tr. 449L-449Y) and the Appeals Council

5  affirmed the ALJ's findings.  (Tr. 449.)  The matter is now before this court pursuant to 42 U.S.C. §

6  405(g).

7                              **STATEMENT OF FACTS**

8          The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and

9  the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

10         Plaintiff was 42 years old at the time of the second hearing.  (Tr. 657.)  She was in special

11  education classes but graduated from high school.  (Tr. 427, 430, 657, 659.)    Plaintiff has work

12  experience as a dealer in a casino, maid, and kitchen worker.  (Tr. 440.)  Plaintiff testified she cannot

13  work because of pain in her hips.  (Tr. 430, 659.)  She occasionally gets kidney infections and she has

14  asthma and allergies.  (Tr. 435, 663-64.)  Her knees, ankles, wrists, elbows and shoulders "pop" every

15  day which causes pain.  (Tr. 436-37, 662.)  Her knees ache and she gets cramps in her hands.  (Tr. 659-

16  60.)  Her joints bother her.  (Tr. 661.)  Plaintiff has used alcohol regularly since her teen years.  (Tr. 673-

17  74.)  She testified the last time she had alcohol was one month before the second hearing.  (Tr. 671.)

18                              **STANDARD OF REVIEW**

19         Congress has provided a limited scope of judicial review of a Commissioner's decision.  42

20  U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the

21  determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler,*

22  760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The

23  [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are

24  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42

25  U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

26  1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan,* 888 F.2d 599,

27  601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th

28  Cir. 1988).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9ᵗʰ Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9ᵗʰ Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9ᵗʰ Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler,* 749 F.2d 577, 579 (9ᵗʰ Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9ᵗʰ Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9ᵗʰ Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A).  The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9ᵗʰ Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

contributing to the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would  be disabling.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity since May 9, 2006, the alleged onset date.  (Tr. 449O.)  At step two, the ALJ found plaintiff has the following severe impairments: multiple arthralgias and alcohol dependence and abuse.  (Tr. 449O.)   At step three, the ALJ found that plaintiff's impairments, including the substance use disorders, meet section 12.04, 12.06 and 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 449O.) Because the record contains evidence of substance addiction, the ALJ continued the analysis.        T h e ALJ determined if plaintiff stopped the substance use, plaintiff would continue to have  multiple arthralgias as a severe impairment.  (Tr. 449P.)  However, the ALJ found that if plaintiff stopped the substance use, plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1.  (Tr. 449S.)  The ALJ then determined:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  She can occasionally balance, stoop, crouch kneel, and crawl.  The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and hazards such as machinery and heights.  The claimant is afflicted with symptoms from various sources including mild to moderate chronic pain which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily.   The claimant takes medication for relief of her symptoms, but the medications do not prevent her from functioning at the levels indicated, and she would remain reasonably alert to perform required functions presented by her work setting.

(Tr. 449S.)  At step four, the ALJ found that if plaintiff stopped the substance use, plaintiff would be capable of performing past relevant work.  (Tr. 449W.)   Alternatively, after considering plaintiff's age,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

education, work experience, residual functional capacity and the medical-vocational guidelines, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 448X-49X.)  Because plaintiff would not be disabled if she stopped the substance use, the ALJ determined her substance use disorder is a contributing factor material to the determination of disability.  (Tr. 449X.)  Thus, the ALJ concluded plaintiff has not been disabled within the meaning of the Social Security Act, since the amended alleged date of onset.  (Tr. 449X.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Specifically, plaintiff asserts the ALJ: (1) failed to properly consider the medical opinion evidence; and (2) failed to obtain the testimony of a vocational expert.  (ECF No. 17 at 12-20.)  Defendant argues the ALJ: (1) properly evaluated the medical record; and (2) made properly supported findings at step four and step five .  (ECF No. 22 at 9-17.)

**DISCUSSION**

**1.     Psychological Opinions**

Plaintiff argues the ALJ improperly weighed the psychological opinion evidence.  (ECF No. 17 at 10-14.)     In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining  physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Plaintiff argues the ALJ erred by rejecting the opinion of Dr. Charboneau, an examining

psychologist.  (ECF No. 17 at 16-18.)  Dr. Charboneau completed a psychological evaluation and a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form on August 15, 2007.  (Tr. 269-81.)  Dr. Charboneau reviewed plaintiff's medical and psychological file and diagnosed mood disorder, NOS; rule out bipolar disorder NOS; pain disorder associated with both psychological factors and a general medical condition, chronic; and alcohol abuse.  (Tr. 275-76.)  He assessed a GAF of 47.[1] He assessed three marked and seven moderate limitations in various functional areas. (Tr. 280-81.)  The ALJ gave little weight to Dr. Charboneau's opinion.  (Tr. 449R.)

The first reason given by the ALJ in rejecting Dr. Charboneau's opinion is that Dr. Charboneau did not indicate plaintiff's level of functioning if she stopped substance abuse.  (Tr. 449R.)  During the evaluation, plaintiff admitted ongoing alcohol use.[2]  (Tr. 449R, 270.)  Dr. Charboneau's diagnostic impression of file review stated:

> Alcohol abuse seems to be present variably, indirectly suggesting that she has not been able to remain sober.  Most certainly this would have to become effective in order to properly evaluate not only her issues of chronic pain but her emotional issues as well.  It would not be unlikely to find that her pain issues are perhaps exacerbated by psychological issues which include substance abuse or dependence.

(Tr. 278.)  On the Medical Source Statement form, Dr. Charboneau indicated: "Use of alcohol and cigarettes probably exacerbates her physical and emotional issues such as mood instability and asthma. If she were abstinent, physical (chronic pain) and emotional issues could be evaluated with more accuracy. . . ."  (Tr. 280.)  These statements support the ALJ's conclusion that Dr. Charboneau's assessment of plaintiff's limitations includes the effects of substance abuse and the limitations would be different after abstinence.  An assessment of limitations *with* the effects of substance abuse are not helpful to the ALJ attempting to determine plaintiff's limitations *without* the effects of substance abuse. Therefore, this is a specific, legitimate reason for rejecting Dr. Charboneau's assessed limitations.

Plaintiff argues the ALJ's statement that Dr. Charboneau's gave no indication of plaintiff's level of functioning if she were to stop substance abuse is not legitimate because Dr. Charboneau "did, in fact,

---

[1]A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

[2]Plaintiff reported drinking half a case or 12 beers once a week or every two weeks.  (Tr. 270.)

address the substance use issues in his evaluation." (ECF No. 17 at 16.) The ALJ did not state Dr. Charboneau failed to address the substance use issue; rather, the ALJ indicated Dr. Charboneau did not identify limitations without the effects of substance abuse. (Tr. 449R.) Indeed, Dr. Charboneau suggests plaintiff would have to be sober before such limitations could be properly evaluated. (Tr. 278.) Even if plaintiff's interpretation of the language of Dr. Charboneau's report is a reasonable one (and the court does not conclude that it is), it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ's determination that Dr. Charboneau's assessment of limitations includes the effects of substance use is reasonable.[3]

The second reason mentioned by the ALJ in rejecting Dr. Charboneau's opinion is that test results reported by Dr. Charboneau and his own comments do not support such significant limitations. (Tr. 449R-50R.) An ALJ may discredit a physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ pointed out that Dr. Charboneau's objective test results included scores in the normal and average range and Dr. Charboneau opined plaintiff's mental status and brain functioning were within normal limits. (Tr. 449R, 272-75.) Her cognitive functioning was low average and memory was average. (Tr. 449R, 275.) He also opined it was possible that physical issues combine with mood and emotional issues to limit functioning overall. (Tr. 449R, 275.) However, as noted *supra*, Dr. Charboneau also identified the effects of alcohol as clouding the true picture of plaintiff's limitations. (Tr. 278, 280.) Notwithstanding, Dr. Charboneau assessed marked or moderate limitations in all functional areas. (Tr. 280-81.)

Plaintiff argues the ALJ's second reason for rejecting Dr. Charboneau's opinion is a "boilerplate statement" is not specific enough to justify rejecting the opinion. (ECF No. 17 at 17.) However, the ALJ specifically mentioned test results and comments supporting his reasoning "as summarized herein." (Tr. 449R.) The ALJ detailed results of the Mini Mental Status Examination, the WAIS-III, WMS-III, Trail Making tests in addition to some of Dr. Charboneau's comments. (Tr. 449R.) This constitutes substantial

---

[3]Dr. Martin also testified she thought Dr. Charboneau's assessment included the effects of alcohol. (Tr. 655.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

evidence in the record supporting a specific, legitimate reason for rejecting the examining physician's opinion. The ALJ gave two specific, legitimate reasons supporting rejection of Dr. Charboneau's opinion. As a result, the ALJ did not err.

Plaintiff also argues Dr. Charboneau is the only psychologist who reviewed all records, interviewed plaintiff, performed objective testing, and completed a Medical Source Statement of Ability to Do Work-Related Activities. (ECF No. 17 at 18.) In order to properly reject the opinion of an examining physician, the ALJ must supply specific, legitimate reasons supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. The ALJ did so here. As a result, the ALJ's consideration of Dr. Charboneau's opinion was legally sufficient and the ALJ did not err.

In addition to the foregoing, the ALJ also cited other supporting psychological evidence. The ALJ gave significant weight to the opinion of Dr. Severinghaus who examined plaintiff and prepared a psychological evaluation report in June 2006. (Tr. 449Q, 146-51.) Dr. Severinghaus diagnosed alcohol dependence with probable continuing abuse, provisional; remote history of marijuana abuse in full sustained remission; depressive disorder, NOS, mild to moderate; post-traumatic stress disorder, mild to moderate, chronic, early-onset; rule out cognitive disorder NOS; rule out borderline intellectual functioning. (Tr. 148.) Dr. Severinghaus opined plaintiff had mild to moderate memory difficulties of unclear origin which would probably not preclude working. (Tr. 148.) He noted some difficulty with abstract thinking and problem-solving, but pointed out she has been able to work with those limitations before and they probably do not preclude work. (Tr. 148.) Her pace and persistence were largely unimpaired. (Tr. 148.) Her interpersonal functioning was impaired primarily due to her drinking. (Tr. 148.) Dr. Severinghaus opined plaintiff's drinking likely affects all of her functional areas to some degree and that it was possible most or all of her problems would remit if she achieved sobriety. (Tr. 148.)

The ALJ also cited the opinion of Dr. Everhart who examined plaintiff, reviewed all records, including Dr. Charboneau's, performed objective testing, and prepared a written report in March 2010. (Tr. 607-17.) Dr. Everhart indicated the primary diagnosis was alcohol dependence with remote history of cannabis abuse in full sustained remission and depressive disorder NOS. (Tr. 614-15.) Dr. Everhart opined plaintiff's attention, concentration and intellectual ability appear to be within normal limits. (Tr. 615.) Test results indicate plaintiff has the ability to listen, understand, remember and follow simple

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

directions, but may have some difficulty with complex multi-step tasks. (Tr. 615.) Dr. Everhart also noted evidence of possible malingering. (Tr. 613-15.) Plaintiff remained on task, was not easily distracted and had good persistence. (Tr. 615.) The ALJ noted the limitations described by Dr. Everhart are not more than mild and determined it is clear Dr. Everhart feels plaintiff's primary issue is substance abuse. (Tr. 449R.)

The ALJ also gave significant weight to the testimony of the medical expert, Dr. Martin. (Tr. 447O.) Dr. Martin opined plaintiff's mental impairments are not severe without the effects of alcohol. (Tr. 618.) She pointed out that plaintiff's intellectual abilities generally tested within the average range and her mental health issues do not seem too severe because plaintiff has never been hospitalized or medicated. (Tr. 656.) She opined the only reason plaintiff would not be able to function would be her alcohol use. (Tr. 656.)

Plaintiff argues "the remand order indicated that the ALJ was to have a psychiatrist testify to clarify the nature and severity of Ms. Iness' impairments, Dr. Martin was only a psychologist." ECF No. 17 at 14.) The district court's remand order did not direct the ALJ obtain the testimony of a psychiatrist at the second hearing. The remand order directs the ALJ to "obtain testimony from a medical expert at the hearing." (Tr. 458-59.) The Appeals Council also directed the ALJ to "Obtain evidence from a medical expert, preferably a psychiatrist, to clarify the nature and severity of the claimant's impairments." (Tr. 455.) The Appeals Council indicated testimony from a psychiatrist was "preferable" but not mandatory. Dr. Martin's qualifications as a medical expert have not been challenged and the ALJ did not err in considering her testimony.

The district court's remand order also directs the ALJ to obtain updated medical evidence, "including a psychiatric evaluation." (Tr. 458.) The Appeals Council directed the ALJ to obtain additional evidence of plaintiff's mental impairments which may include, "if warranted and available, a consultative psychiatric examination." (Tr. 455.) The ALJ obtained updated medical evidence, including an evaluation by Dr. Everhart. Dr. Everhart is a licensed psychologist, not a psychiatrist. (Tr. 607.) The court does not generally look favorably on failure to comply with a court order, but it is noted that the language in the order mirrors language in the stipulated motion for remand and is not a reflection of a specific preference for the opinion a psychiatrist over a psychologist by the court. (Tr. 449, 458.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

Furthermore, the Appeals Council instruction is discretionary since evidence should be obtained from a psychiatrist "if warranted and available." (Tr. 455.)  There is no argument or evidence suggesting that a psychiatric opinion would be more accurate, persuasive, or of greater insight in this matter. Additionally, plaintiff did not raise the issue of Dr. Everhart's credentials or request further review by a psychiatrist at the second hearing.  Therefore, plaintiff waived the issue and any error by the ALJ in failing to obtain evidence from a psychiatrist rather than a psychologist is harmless.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

The ALJ provided legally sufficient specific, legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Charboneau.  In addition, the ALJ cited substantial evidence supporting the findings regarding plaintiff's mental limitations.  Plaintiff may interpret the evidence differently, but the court concludes the ALJ's interpretation was reasonable and supported by the record.  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  As a result, the ALJ did not err.

**2.    Medical Opinion - Dr. Long**

Plaintiff argues the ALJ erred by rejecting the opinion of Dr. Long, a treating physician.  (ECF No. 17 at 18-19.)  Dr. Long completed a DSHS Physical Evaluation form in April 2005.  (Tr. 180-85.) She opined that plaintiff's asthma was of mild severity and caused no significant interference with the ability to perform basic work-related activities.  (Tr. 182.)    Dr. Long assessed plaintiff's work level as sedentary.  (Tr. 182.) Dr. Long noted a long history of polyarthralgias in the attached treatment note but did not find any interference in plaintiff's ability to do work-related activities due to arthralgias.  (Tr. 182, 184.)

The ALJ rejected Dr. Long's opinion because it was based primarily on plaintiff's self-report. (Tr. 449W.)  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885

F.2d at 604.  The ALJ made a negative credibility finding which is not challenged by plaintiff.[4]  (Tr. 449T.)  Thus, if Dr. Long's opinion that plaintiff is limited to sedentary work is based on plaintiff's self-report, Dr. Long's opinion is properly rejected.  Dr. Long noted that plaintiff's arthritis panel, CBC, sed rate, uric acid, ANA and rheumatoid factor had all been negative in the past.  (Tr. 185.)  The ALJ also pointed out that Dr. Long's examination of plaintiff was not thorough because she did not do a joint exam.  (Tr. 449W, 185.)  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957.  Dr. Long opined plaintiff's problem is more psychological than physical and recommended a psychological exam "because I do not think the medical problems are enough at this point."  (Tr. 183, 185.)  After considering Dr. Long's own findings, the ALJ reasonably concluded the sedentary limitation was based on plaintiff's self-report.

Plaintiff seems to argue that Dr. Long's opinion is justified because she noted plaintiff had a longstanding history of polyarthralgias.  (ECF No. 17 at 19.)  However, plaintiff's longstanding history indicates nothing more than plaintiff had been complaining about arthralgias for a long time.  Dr. Long noted all testing had come back negative and concluded plaintiff's problems were probably psychological, not physical.  As a result, plaintiff's complaints are the only factor Dr. Long could have relied upon in assessing a sedentary work level.

Plaintiff also argues the ALJ erred by suggesting that Dr. Long's examination was incomplete since Dr. Gerber, the medical expert, did no examination at all.  (ECF No. 17 at 18-19.)  This argument is not well-taken.  While the ALJ gave Dr. Gerber's opinion significant weight, the ALJ also declined to adopt the limitations assessed by Dr. Gerber and gave plaintiff the benefit of the doubt in finding plaintiff could perform light work.  (Tr. 449V.)  Furthermore, Dr. Gerber's non-examining opinion has nothing to do with the completeness or accuracy of Dr. Long's treating opinion.  As discussed *supra*, the

---

[4]If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The ALJ's reasons are clear and convincing and are supported by substantial evidence.  (Tr. 449T-49V.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

regulations and case law direct that weight be assigned according the nature of the relationship between the doctor and the claimant.  A properly supported treating physician opinion is entitled to more weight than a conflicting non-examining physician opinion, unless specific, legitimate reasons supported by substantial evidence exist to justify rejection of the treating opinion.  The ALJ provided a legally sufficient reason for rejecting Dr. Long's opinion and the reason is supported by substantial evidence. Dr. Gerber did not specifically discuss Dr. Long's opinion and the ALJ did not cite Dr. Gerber's opinion in rejecting Dr. Long's opinion.    The ALJ's conclusions are supported by substantial evidence and plaintiff's argument is without merit.

**3.    Vocational Expert**

Plaintiff argues the ALJ erred by failing to call a vocational expert at the second hearing.  (ECF No. 17 at 19-20.)  Plaintiff asserts, "The Appeals Council indicated that he was to obtain supplemental evidence from a vocational expert to clarify the effects of Ms. Iness' limitations on her occupational base."  (ECF No. 17 at 19-20.)  However, the Appeals Council actually stated, "If warranted by the expanded record, obtain supplemental evidence from a vocational expert."  (Tr. 455.)  The language is discretionary, not mandatory as suggested by plaintiff.

Plaintiff also argues the ALJ was required to call a vocational expert at the second hearing to discuss plaintiff's past relevant work because the RFC at the second hearing was not the same as the RFC at the first hearing.  (ECF No. 17 at 20.)  The RFC considered by the vocational expert at the first hearing was:

> We'll say she's capable of light exertion level activities, with functional limitations such that she can only occasionally stoop, crouch, crawl, kneel, balance or climb stairs.  She can never climb ladders, ropes or scaffolds. She should avoid environmental pollutants, dust, fumes and gases, but apparently she can function adequately in, say, a, an atmosphere like we have in the room here.  Assume that this individual experiences symptoms from various sources including mild to moderate chronic pain, which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting, and could carry out normal work assignments satisfactorily.  Assume that she takes medication for relief of her symptoms, but the medications would not prevent her from functioning at the level indicated.  And assume that she does need to change position from time-to-time to relieve her[] symptoms, in this case I'm thinking she'd need to, maybe if she was seated she'd need to stand up and move around every 45 minutes to an hour.

(Tr. 18.)  The vocational expert testified that a hypothetical person with those limitations could perform

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

plaintiff's past relevant work as a casino dealer. (Tr. 442.) The RFC finding of the second ALJ is similar but slightly less restrictive:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch kneel, and crawl. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and hazards such as machinery and heights. The claimant is afflicted with symptoms from various sources including mild to moderate chronic pain which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. The claimant takes medication for relief of her symptoms, but the medications do not prevent her from functioning at the levels indicated, and she would remain reasonably alert to perform required functions presented by her work setting.

(Tr. 449S.)  Because the vocational expert concluded a person with the RFC considered at the first hearing could perform plaintiff's past relevant work as a casino dealer, and because the RFC finding by ALJ Payne is less restrictive than the first RFC finding, it was reasonable for the ALJ to assume plaintiff could perform past relevant work without further testimony from a vocational expert.[5]  Thus, the ALJ did not err by failing to call a vocational expert at the second hearing regarding past relevant work.  Even if the ALJ erred at step four, the ALJ made an alternative finding at step five and the error would be harmless. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

        Plaintiff also argues the ALJ was required to call a vocational expert at step five because the RFC contained non-exertional limitations. (ECF No. 17 at 20.)  Plaintiff cites *Polny v. Bowen*, 864 F.2d 661 (9th Cir. 1988) for the proposition that the testimony of a vocational expert is mandatory if non-exertional impairments restrict work capacity.[6]  (ECF No. 17 at 20.)  However, the medical-vocational guidelines

---

[5]Plaintiff suggests the second RFC contained non-exertional limitations not included in the hypothetical to the vocational expert at the first hearing.  (ECF No. 17 at 20.)  The non-exertional limitations in the second RFC are substantively the same as those in the hypothetical given to the vocational expert at the first hearing.

[6]The *Polny* court held that when non-exertional impairments are severe enough to limit the range of work, the testimony of a vocational expert is necessary to identify specific jobs within the claimant's abilities.  *Id.* at 663-64.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

may be used in lieu of vocational expert testimony in cases where they accurately describe the claimant's abilities and limitations. *Heckler v. Campbell*, 461 U.S. 458, 462 n. 5 (1983). The guidelines consider limitations on the claimant's strength, i.e., "exertional limitations." *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1472 (9th Cir. 1984). If the claimant has a significant non-exertional limitation, such as a mental impairment or the inability to tolerate certain work environments, the ALJ must determine how much the claimant's work capacity is further limited by non-exertional restrictions. *Id.*; 20 C.F.R. pt. 404, subpt. P. app. 2. § 200.00(e)(2). Thus, an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)

In the case at hand, the ALJ found plaintiff's non-exertional limitations have little or no effect on the occupational base of unskilled light work. (Tr. 449X.) Non-exertional limitations "affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling. . . ." 20 C.F.R. § 404.1569a. Where a claimant's only limitation is in climbing and balancing, such a limitation does not ordinarily have a significant impact on the occupational base. S.S.R. 85-15. If a claimant can stoop, crouch and kneel occasionally to lift objects, the light occupational base is "virtually intact." *Id.* When a claimant should avoid excessive noise or dust or environmental pollutants, the impact on the occupational base is minimal because "most job environments do not involve great noise, amounts of dust, etc." *Id.* Plaintiff's physical non-exertional limitations include: (a) occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; (b) occasional balancing, stooping, crouching, kneeling, and crawling; and (c) avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and hazards such as machinery and heights. (Tr. 449S.) Based on S.S.R. 85-15, none of plaintiff's physical non-exertional limitations significantly erode the occupational base.

Plaintiff also has non-exertional mental limitations: (a) mild to moderate chronic pain which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily; and (b) medication for relief of her symptoms, but the medications do not prevent her from functioning at the levels indicated, and she would remain reasonably alert to perform required functions presented by her

work setting. (Tr. 449S.)  The pain limitation contains a specific finding that plaintiff could remain attentive and responsive and could carry out normal work assignments.  The medication limitation contains a specific finding she would be able to perform required functions of the work setting despite taking medication.

The ALJ properly concluded that neither the physical or mental non-exertional limitations supported by substantial evidence in the record significantly erode the occupational base.  As a result, use of the medical-vocational guidelines was appropriate and the ALJ did not err.

<strong>CONCLUSION</strong>

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(ECF No. 21)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(ECF No. 16)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED May 3, 2012

S/ JAMES P. HUTTON<br/>UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16